**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE MACK, <br><br> Plaintiff, <br><br> v. <br><br> SIX FLAGS GREAT ADVENTURE, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 23-3813 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Danielle Mack's ("Plaintiff") Motion to Remand this action to the Superior Court of New Jersey, Law Division, Ocean County. (ECF No. 5.) Also before the Court is Defendants Six Flags Great Adventure, LLC ("Six Flags") and Six Flags Entertainment Corporation's ("Six Flags Corporation") (collectively "Defendants") Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure[1] 12(b)(1), 12(b)(2), 12(b)(6), and 12(h)(3), or in the alternative, to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (ECF No. 6.) The Court has considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's Motion to Remand is granted. Defendants' Motion to Dismiss is denied as moot.

---

[1] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**

Plaintiff is a resident of New Jersey and was formerly employed by Defendants at its "Six Flags Great Adventure & Safari and Hurricane Harbor" amusement park ("Great Adventure") in Jackson, New Jersey. (*See* Pl.'s Compl. ¶¶ 6-7, ECF No. 1-1.) Six Flags is a New Jersey limited liability company with its principal place of business in Jackson, New Jersey. (*Id.* ¶ 7.) Six Flags Corporation is a Delaware corporation with its principal place of business in Arlington, Texas. (*Id.* ¶ 8.)

On March 26, 2023, Plaintiff initiated this wage and hour putative class action in the Superior Court of New Jersey, Law Division, Ocean County. (*See generally id.*) Plaintiff, on behalf of herself and others similarly situated, pleads a single cause of action under the New Jersey Wage and Hour Law ("NJWHL") for unpaid minimum wages, N.J.S.A. 34:11-56a4, and unpaid wages for "all hours worked" under N.J.A.C. 12:56-5.1. (*Id.* ¶¶ 22-28.) The Complaint alleges that Plaintiff and other hourly employees at Six Flags were required "to perform uncompensated work both before and after their compensable shift[s]." (*Id.* ¶ 2.) Specifically, Plaintiff asserts that "[b]efore clocking in at the beginning of their shifts, Defendants required Plaintiff and all other hourly employees to undergo security screenings and then walk long distances across the 510-acre premises of the amusement park to the location of the time clocks." (*Id.* ¶ 3.) At the conclusion of their shifts, Plaintiffs and other hourly employees were required to walk across the premises to the locations of the time clocks to clock out, and then went through "additional security screenings before they were permitted to leave the amusement park." (*Id.* ¶ 4.) Accordingly, Plaintiff contends that she and the putative class were not paid for time purportedly spent: (i) undergoing security screenings and (ii) walking to and from their workstations at the start and end of their shifts. (*Id.* ¶¶ 3-4.)

On July 17, 2023, Defendants removed the action to this Court. (Notice of Removal, ECF No. 1.) Defendants assert that the claims in Plaintiff's Complaint fall within the scope of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA") and thereby raise federal question jurisdiction under 28 U.S.C. § 1331. Defendants' Notice of Removal states that Plaintiff was a member of the Services Trade Council Union ("Union"), and as such, Plaintiff's former employment with Defendants and related conditions are governed by a Collective Bargaining Agreement ("CBA") between the Union and Six Flags.[2] (*Id.* ¶ 5.)

Under the CBA, the Union is the "sole and exclusive collective bargaining representative of all [Great Adventure] service and maintenance employees," such as Plaintiff. (*Id.* ¶ 6.) The CBA sets forth, among other terms, employee wage rates (*see* CBA, Art. 12), establishes a regular pay schedule, work hours, and overtime rates (*id.*, Art. 10, 11), and details work assignments (*id.*, Art. 15), standards of conduct (*id.*, Art. 17), holidays and vacation (*id.*, Art. 19, 20), and other types of leave available to employees (*id.*, Art. 16, 21, 29). Article 10 of the CBA—titled "Hours of Work"—prescribes the minimum guaranteed pay for Union members. For example, Section 10.3(b) provides that Union personnel shall, "during the season and when the Park is operating on a continuous, full-time basis, receive a guarantee of eight (8) hours per day on a five (5) day per week basis or a guarantee of ten (10) hours per day on a four (4) day per week basis, as applicable." (*See id.*, Art. 10, § 10.3(b).) Additionally, Section 10.4(a) states that "[a] regularly scheduled workday for Local 54 full time employees shall consist of a minimum of four (4) hours. All full-time Local 54 employees who work more than four (4) hours, but less than eight (8) hours shall receive eight (8) hours pay." (*Id.*, Art. 10, § 10.4(a).)

---

[2] A copy of the CBA is attached as Exhibit A to the Declaration of Brad McClain ("McClain Decl."), Director of Human Resources of Six Flags. (*See* CBA, ECF No. 6-2.)

The CBA also provides employees with paid and unpaid intervals for non-working time. (*Id.*, Art. 10, §§ 10.6, 10.7.) Section 10.6 of the CBA, titled "Meal Period, Dress and Travel Time[,]" reads:

> **Section 10.6**. Meal Period, Dress and Travel Time. All full-time employees shall be scheduled for a 45 minute meal break of which fifteen (15) minutes shall be paid dress and travel time and thirty (30) minutes shall be unpaid. No employee shall be required to work more than five (5) hours without a meal break, except in the event of a business necessity. All seasonal employees will be scheduled for a 45[-]minute unpaid meal break.

(*Id.*, Art. 10, § 10.6.)

The CBA also contains a "Grievance Procedure" for resolution of disputes between Six Flags and the Union:

> All complaints, disputes or grievances arising between the parties concerning the parties, involving questions of interpretation or application of any clause in this Agreement or any acts, conduct or relations between the parties, directly or indirectly, which arise out of this Agreement shall be resolved [through certain grievance and arbitration procedures.]

(*Id.*, Art. 18, § 18.2(a).)

On August 4, 2023, Plaintiff moved to remand this case to the New Jersey Superior Court. (Pl.'s Moving Br., ECF No. 5.) In essence, Plaintiff asserts that the Complaint seeks to enforce nonnegotiable statutory protections and rights that arise exclusively from state law and that exist independently of the CBA. (*See generally id.*) Plaintiff further alleges that Section 301 preemption does not result merely because the CBA may be consulted in the course of proving her claim. (*Id.*) In response, Defendants moved to dismiss, or alternatively, to compel arbitration under the terms of the CBA pursuant to the FAA, 9 U.S.C. § 1 *et seq.* (*See generally* Defs.' Mot. Dismiss, ECF No. 6.) Defendants subsequently opposed Plaintiff's Motion to Remand. (*See* Defs.' Opp'n Br., ECF No. 13.) In their motion, Defendants argue that Section 301 preempts Plaintiff's action

4

because the CBA is intertwined with her state law claims and the Court must interpret the CBA to resolve them. (Defs.' Mot. Dismiss 1; Defs.' Opp'n Br. 2.)

## II. **LEGAL STANDARD**

### A. **Removal**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]" *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 7-8 (1983) (citing 28 U.S.C. § 1441). Federal courts, however, are courts of limited jurisdiction; to hear a case, a federal court must have jurisdiction over the issues presented, such as diversity or federal question jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983).

The Third Circuit has held that the removal statute "is to be strictly construed against removal" to honor Congressional intent. *Samuel-Basset v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."). Accordingly, "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

### B. **Federal Question Jurisdiction**

A district court has original jurisdiction over cases "arising under" federal law. *See* 28 U.S.C. § 1331, 1441(a); *see also* 28 U.S.C. § 1441(a). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule recognizes that the plaintiff, as the master

of its claim, may rely exclusively on state law claims to avoid federal question jurisdiction. *Constr. Laborers Vacation Tr.*, 463 U.S. at 10 (stating that "[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."). One exception to the well-pleaded complaint rule, however, is the doctrine of "complete preemption." *See, e.g.*, *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 248 (3d Cir. 2000) (explaining that an exception to the well-pleaded complaint rule "is for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character."). Under the complete preemption doctrine, certain federal statutes are so "extraordinary" that they "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). The complete preemption doctrine applies to Section 301 of the LMRA, which confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a); *see also Avco Corp. v. Aero Lodge*, 390 U.S. 557, 558-62 (1968).

### III.    DISCUSSION

#### A.    Preemption Under Section 301 of the LMRA

Section 301 of the LMRA provides "exclusive federal jurisdiction for suits over the "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This is "to ensure uniform interpretation of collective-bargaining agreements, and . . . to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988).

To further the goals of uniformly interpreting labor contracts, Section 301 "converts state causes of action into federal ones and allows removal 'when the heart of the state-law complaint is a clause in the collective bargaining agreement.'" *N.J. Carpenters v. Tishman Constr. Corp. of*

*N.J.*, 760 F.3d 297, 305 (3d Cir. 2014) (quoting *Caterpillar*, 482 U.S. at 394). The Supreme Court has further explained that Section 301 completely preempts a state law cause of action where resolution of the action is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Lingle*, 486 U.S. at 413. More specifically, a state law is preempted by Section 301 "only if such application requires the *interpretation* of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413 (emphasis added).

Despite Section 301's broad preemptive effect, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis-Chalmers*, 471 U.S. at 212-13. "'[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 232 (3d Cir. 1999) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1999)); *see also O'Keefe v. Hess Corp.*, No. 10-2598, 2010 WL 3522088, at *3 (D.N.J. Sept. 1, 2010) (noting that preemption "should not be lightly inferred, and does not arise simply because a collective-bargaining agreement may be involved"). Thus, Section 301 does not preempt a claim deriving from an independent, substantive provision of state law. *See Caterpillar*, 482 U.S. at 395.

  **B.** **Whether Section 301 Preempts Plaintiff's NJWHL Claim**

Against this backdrop, the first inquiry is whether Plaintiff's claims can be resolved without interpreting the CBA and its respective terms. "The starting point in analyzing whether a state law claim is preempted by § 301 is to set forth the elements of the claim." *Dent v. Cingular Wireless, LLC*, No. 07-552, 2007 WL 1797653, at *5 (D.N.J. June 20, 2007) (citing *Lingle*, 486 U.S. at 407).

7

Plaintiff asserts state law claims for unpaid minimum wages and "unpaid wages for all hours worked" under the NJWHL. (Compl. 9.)

Defendants argue that Plaintiff's claim fails because the NJWHL does not provide a remedy for unpaid, non-overtime wages. (Defs.' Opp'n Br. 8-9) (citing *AV Design Servs., LLC. v. Durant*, No. 19-8688, 2021 WL 1186842, at *12 (D.N.J. Mar. 30, 2021) (noting that the NJWHL does not provide remedies for unpaid, non-overtime wages); *Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016) (same)).) Defendants maintain that Plaintiff's claims must fail because the Complaint "does not allege a failure to pay the minimum wage, but rather seeks the full value of purportedly unpaid non-overtime wages." (*Id.* at 9.) In short, Defendants argue that they will prevail on the merits of the NJWHL claim, which will result in the "sole source of any recovery" being a claim for breach of the CBA, requiring LMRA preemption. (*Id.*) Plaintiff counters that the Complaint sets forth a viable claim for unpaid wages for "hours worked" under the NJWHL where employees do not receive wages "for time spent undergoing security screenings and for the walking time before and after the security screenings before and after their paid shifts at the Great Adventure amusement park." (*See* Pl.'s Moving Br. 14-16 (citing N.J.A.C. 12:56-5 and N.J.A.C. 12:56-5.2(a)).)

The NJWHL "establish[es] a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being." N.J.S.A. 34:11-56a. The NJWHL requires New Jersey employers to pay employees the mandatory minimum wage, N.J.S.A. 34:11-56a4; and pay their employees "for all hours worked," N.J.A.C. 12:56-5.1. The New Jersey Administrative Code defines "hours worked" as "[a]ll the time the employee is required to be at his or her place of work or on duty."

N.J.A.C. 12:56-5.2. "A violation of the [NJWHL] shall occur when an employer . . . violates any provision of this chapter or of any order issued under this chapter." N.J.A.C. 12:56-1.2(a)(8); *see also Merlo v. Fed. Express Corp.*, No. 07-4311, 2010 WL 2326577, at *10 (D.N.J. May 7, 2010) (finding that a "violation of the NJWHL's implementing regulations [also] constitutes a violation of the [NJWHL]") (citing N.J.A.C. 12:56-1.2(a)(8)).

Plaintiff notes that in *Merlo*, a class of FedEx "couriers" sued under the NJWHL regulations and alleged that they performed unpaid work before their scheduled start time. 2010 WL 2326577, at *1. The couriers' tasks included inspecting their uniforms, reviewing daily manifests, and picking up work supplies. *Id.* FedEx moved for summary judgment advancing the same argument Defendants present here, namely that the workers could not maintain a claim under the NJWHL because they were paid "well above the statutory minimum wage." *Id.* at *2-3. The court disagreed and held that the NJWHL included an "implied right of action" for such wages because N.J.A.C. 12:56-5.1(a) states that "[e]mployees entitled to the benefits of the act shall be paid for all hours worked." *Id.* at *9-10.

In the time since *Merlo* issued, this court has determined that, at the motion to dismiss stage, "any time spent undergoing mandatory pre-shift and post-shift security screenings may be compensable under the NJWHL." *Farrell v. FedEx Ground Package Sys.*, 478 F. Supp. 3d 536, 543 (D.N.J. 2020) (finding that the time Amazon workers spent undergoing post-shift security screenings was compensable as hours worked pursuant to N.J.A.C. 12:56-5.2(a)); *see also Vaccaro v. Amazon*, No. 18-11852, 2020 WL 3496973, at *12 (D.N.J. June 29, 2020) (finding that "as pleaded, the time spent undergoing mandatory post-shift security screenings is compensable under the NJWHL."). The Court therefore disagrees with Defendants and finds that, for purposes of the within preemption analysis, Plaintiff has set forth a viable claim under the NJWHL, a claim that

9

is distinct and independent of the CBA. *See, e.g., Oddo v. Bimbo Bakeries USA, Inc.*, No. 16-4267, 2017 WL 2172440, at *9 (D.N.J. May 17, 2017) ("[T]he NJWHL imposes a duty on employers to pay their employees overtime wages—a duty that is independent of any contractual obligations."); *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 451 (D.N.J. Dec. 22, 2011) ("[T]he right to be paid a minimum wage is an independent right created by federal and state law, and the parties to a CBA cannot contract away such right . . . ."); *O'Keefe*, 2010 WL 3522088, at *10-12 (same).[3]

### C. Whether Plaintiff's Claims Require Interpretation of the CBA

That is not, however, the end of the inquiry. The Court must now determine whether resolving Plaintiff's claims will nonetheless require interpretation of the CBA. On this point, Defendants must demonstrate that there is a "live interpretational dispute as to specific terms in the CBA that [the Court] need[s] to resolve in order to adjudicate [Plaintiff's] NJWHL claim." *Oddo*, 2017 WL 2172440, at *8; (*see also* Pl.'s Moving Br. 17 (noting that remand is required unless Defendants can meet their heavy burden to demonstrate that Plaintiff's NJWHL claim is substantially dependent upon *interpretation* of the CBA).) Indeed, "[w]hether a claim requires a court to construe or interpret a [collective bargaining agreement] to the point that the claim *depends* on interpretation of the [collective bargaining agreement] is a question riddled with nuance and exception." *Oddo*, 2017 WL 2172440, at *24. It is well established that "[m]erely considering the

---

[3] Defendants also raise statute of limitations arguments against the NJWHL claims, but the Court declines to address them here. (Defs.' Reply Br. in Supp. of Mot. Dismiss 13-14.) As the Ninth Circuit has observed, "the LMRA § 301 forum preemption inquiry is not an inquiry into the merits of a claim; it is an inquiry into the claim's 'legal character' — whatever its merits — so as to ensure *it is decided in the proper forum.*" *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 924 (9th Cir. 2018) (emphasis added) (quoting *Livadas*, 512 U.S. at 123-24). The Ninth Circuit further explained that "[i]n conducting the preemption analysis, we may no more invade the province of the state court to resolve a state law claim over which we lack jurisdiction than we may invade the province of the labor arbitrator to construe the CBA." *Id.* Thus, whether Plaintiff will ultimately prevail on the NJWHL claim is not before the Court and is not considered in the Court's preemption analysis.

terms of a collective bargaining agreement—looking to undisputed terms in a CBA or interpreting a CBA solely to compute damages, for example—does not warrant preemption." *Id.* (collecting various cases).

Defendants broadly refer to a handful of terms in the provisions of the CBA that they contend require interpretation to resolve Plaintiff's state law claims. (Defs.' Opp'n Br. 4-5.)[4] Defendants, however, put forth substantive arguments concerning only two of the CBA's provisions—Sections 10.6 and 10.4(a)—which they contend require interpretation.[5] (*See* Defs.' Opp'n 13-16.)

       i.     *Section 10.6*

Defendants first refer to Section 10.6 of the CBA, titled "Meal Period, Dress and Travel Time[,]" which states in pertinent part:

> **Section 10.6**. Meal Period, Dress and Travel Time. All full-time employees shall be scheduled for a ***45 minute meal break of which fifteen (15) minutes shall be paid dress and travel time and thirty (30) minutes shall be unpaid***. No employee shall be required to work more than five (5) hours without a meal break, except in the event of a business necessity. All seasonal employees will be scheduled for a 45 minute unpaid meal break. Not[]withstanding the other provisions of this Section, Characters on grounds shall receive one (1) thirty (30) minute unpaid meal period and three (3) paid breaks of fifteen (15) minutes each per shift.

(*See* CBA, Art. 10, § 10.6 (emphasis added).)

---

[4] This includes, *inter alia*, provisions that establish "employee wage rates; . . . [a] pay schedule, workhours, and overtime rates; . . . work assignments; standards of conduct; holidays and vacation, and various types of leave available to employees." (*See* CBA (citations omitted).)

[5] Because Defendants have not briefed the other provisions broadly referenced in their Opposition Brief, the Court does not consider them here since Defendants have failed to meet their burden of establishing that these other provisions require interpretation of the CBA. "It is . . . [d]efendants' burden to establish that this case was properly removed as it is the party asserting federal jurisdiction." *Ohio Cas. Ins. Co. v. Wal-Mart Stores, Inc.*, No. 15-7414, 2015 WL 8492454, at *2 (D.N.J. Dec. 9, 2015); *see also Frederico*, 507 F.3d at 193 ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.").

Plaintiff contends that this provision relates solely to "meal break time" and does not address the time employees spend before clocking in and after clocking out of their shifts. (Pl.'s Moving Br. 20.) By contrast, Defendants argue that Section 10.6 contemplates paying employees "fifteen (15) minutes [of] paid dress and travel time." (Defs.' Opp'n 13.) Defendants argue that this provision could be interpreted to pay employees for the duration of time they spend undergoing pre-shift and post-shift security checks, as well as for the time they spend walking to and from the time clocks. (*Id.*)

Defendants lend support from a recent decision of the Central District of California. (*See* Defs.' Opp'n Br. 15-16 (quoting *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022).) Defendants' reliance on *Mellon*, however, is misplaced. The collective bargaining agreement in *Mellon* is distinguishable on its face. That agreement expressly contained a "walking/changing time" provision that compensated employees for the time that they "may be subject to the control of the [e]mployer but not actually performing [their] duties, such as, but not limited to, *walking to and from wardrobe to work stations* and changing into and out of uniforms." *Id.* (emphasis added). The *Mellon* plaintiffs alleged that they received "walking/changing time" pay but maintained that they were not separately paid for time spent undergoing security screenings. *Mellon*, 625 F. Supp. 3d at 1014. Accordingly, the California District Court concluded that it had to consider and interpret the CBA to determine whether the time employees spent passing through security fell within the scope of the "walking/changing time" provision. *Id. Mellon's* holding is inapplicable here. Defendants do not point to an analogous CBA provision that, as in *Mellon*, could be interpreted in a way that would lead to the conclusion that Plaintiff and other employees were in fact compensated for their walking time.

Defendants argue that Article 10.6 may cover the claims at issue; it states that "[a]ll full-time employees shall be scheduled for a 45-minute *meal break* of which fifteen (15) minutes shall be paid dress and travel time and thirty (30) minutes shall be unpaid." (Defs.' Opp'n Br. 5; *see also* CBA, Art. 10, § 10.6.) The Court disagrees. Plaintiff's Complaint does not seek unpaid wages for employee *meal breaks*; rather, it seeks unpaid wages for activities occurring before clocking in and after clocking out of their shifts. (*See* Compl.) Beyond the CBA's plain terms, if the Court accepted Defendants' interpretation of Section 10.6, a "45-minute meal break" could apply to time spent before an employee has officially started a shift or after an employee has completed a shift. This reading of the CBA is unreasonable and strains credulity. Accordingly, the Court finds that it does not have to interpret any part of Section 10.6 of the CBA to resolve Plaintiff's NJWHL claims.

       *ii.*    *Section 10.4(a)*

Next, Defendants contend that Section 10.4(a) of the CBA requires interpretation. Section 10.4(a) states that: "[a]ll full-time Local 54 employees who work more than four (4) hours, but less than eight (8) hours shall receive eight (8) hours pay." (See CBA, Art. 10, § 10.4(a).) Defendants argue that the Court must interpret this section because it governs "when an employee's working day starts, how their wages are computed, and whether the travel and security check time has already been paid [for]." (Defs.' Opp'n Br. 15.)

Section 10.4(a), on its face, does not address the narrow inquiry of whether the alleged uncompensated activities at issue must be compensated as "hours worked." Section 10.4(a) is relevant to whether Plaintiff may receive offsets or credits toward unpaid wages if Plaintiff prevails in this action. It is well established that merely consulting a CBA during the pendency of the proceedings, particularly for the purpose of establishing damages, does not warrant LMRA

preemption. *See Livadas*, 512 U.S. a 123-24 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of [a] state-law litigation plainly does not require the claim to be extinguished."); *O'Keefe*, 2010 WL 3522088, at *5 (stating that referring to the CBA "for purposes of damages calculation does not support § 301 preemption"); *Oddo*, 2017 WL 2172440, at *5 ("[M]erely considering the terms of a collective-bargaining agreement—looking to undisputed terms in a CBA or interpreting a CBA solely to compute damages, for example—does not warrant preemption.").

Moreover, the meaning of Section 10.4(a) and the other provisions referred to by Defendants are not actively in dispute. Plaintiff's Complaint is solely reliant on New Jersey law. (*See generally* Compl.) Plaintiff could have pursued remedies under the CBA or the LMRA but chose not to do so. The Complaint does not refer to the CBA, does not seek to enforce rights under the CBA, and does not seek to interpret any of the provisions of the CBA. (*See id.*) Rather, as aptly stated in *O'Keefe*:

> [Plaintiff] decided to endeavor to establish a basic right under the state statute [i.e. the NJWHL] . . . regardless of the language in the CBA. That was [her] choice as the 'master of [her] complaint.' [Plaintiff's] choice may not serve [her] well on the merits, but it is entitled to deference under the well-pleaded complaint rule.

2010 WL 3522088, at *14-16; *accord Oddo*, 2017 WL 2172440, at *16 (declining to find preemption where plaintiffs, as the master of their complaint, only pled a violation of the NJWHL and chose not refer to the CBA at all).

In sum, Defendants have failed to meet their burden of demonstrating that Plaintiff's NJWHL claim requires interpretation of any of the CBA's provisions. Accordingly, Plaintiff's claims are not preempted by Section 301 of the LMRA.

### D. The CBA's Arbitration Clause Does Not Require Arbitration of the NJWHL Claims

As mentioned above, the CBA contains a grievance provision stating, in relevant part, that "[a]ll complaints, disputes or grievances arising between the parties concerning the parties, *involving questions of interpretation or application* of any clause in this Agreement or any acts, conduct or relations between the parties, directly or indirectly, *which arise out of this Agreement* shall be resolved" through its grievance procedures. (CBA, Art. 18, § 18.2(a)) (emphases added).)

Defendants argue that Section 18 of the CBA is an arbitration clause creating an independent basis for LMRA preemption. (Defs.' Reply Br. in Supp. Mot. Dismiss 17-18.) Plaintiff responds that the grievance provision cannot be so broadly construed as to mandate arbitration for all statutory and common law claims. (Pls.' Reply Br. in Supp. Mot. Remand 13-15, ECF No. 14.)

"An employee's claims that are based on statutory rights, and are thus independent of the rights created by a CBA, may only be subject to arbitration where the CBA contains a *"clear and unmistakable"* waiver of a judicial forum for such rights. *Snyder*, 837 F. Supp. 2d at 440 (emphasis added) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 72 (1998)). In *Snyder*, the court interpreted an arbitration clause in a collective bargaining agreement that, like this case, allowed parties to submit "all grievances, complaints, differences and disputes" to arbitration. 837 F. Supp. 2d at 440. The *Snyder* Court determined that this provision did not create a "clear and unmistakable" waiver of a judicial forum because it did "not expressly specify that all disputes, including those arising independently of the [collective bargaining agreement], are subject to arbitration, nor [did] the [collective bargaining agreement] name or incorporate any federal or state statutes into the arbitration clause." *Id.* In other words, "[a] collective bargaining agreement

15

containing only a general provision to submit all claims to arbitration *cannot preclude a lawsuit concerning an employee's individual statutory rights.*" *Id.* (emphasis added).

Defendants' request to compel arbitration is denied. First, as stated above, the Court does not find that Plaintiff's statutory claims "arise out of" or require "interpretation or application" of the CBA. (*See* CBA, Art. 18, § 18.2(a).) Second, the only section within Article 18 that discusses arbitration, Section 18.2(a)(vi), merely permits arbitration; it states that "the grievance *may* be submitted to arbitration under the rules of the New Jersey State Board of Mediation within three (3) days after alternative dispute resolution has been refused or has failed to produce agreement." (*See id.* (emphasis added).) Third, as was the case in *Snyder*, the grievance provision here is broad; it does not "name or incorporate any federal or state statutes [i.e. the NJWHL] into the arbitration clause." (*See generally id.*) As such, the Court concludes that the arbitration provisions of the CBA are too broad and general to demonstrate the requisite "clear and unmistakable" waiver necessary to compel arbitration.

### IV. CONCLUSION

For the reasons stated above, LMRA § 301 does not preempt Plaintiff's claims. It follows that there is no federal question raised in Plaintiff's Complaint and, as a result, this Court lacks subject matter jurisdiction over this matter. Plaintiff's motion to remand is granted. Accordingly, the Court need not reach the merits of Defendants' Motion to Dismiss, which is denied as moot. The matter is hereby remanded to the Superior Court of New Jersey, Law Division, Ocean County.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**